IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:23-cv-02247-CNS

M.C.W.,

    Plaintiff,

v.

MARTIN O'MALLEY, Commissioner of Social Security,

    Defendant.

---

**ORDER**

---

This matter is before the Court for judicial review of the final decision by the Commissioner of the Social Security Administration (the Commissioner) denying M.C.W.'s[1] application for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XIV of the Social Security Act. Jurisdiction is proper under 42 U.S.C. § 405(g). For the following reasons, the Court REVERSES the Commissioner's denial of benefits and REMANDS for further analysis.

**I. SUMMARY FOR PRO SE PLAINTIFF**

You filed this lawsuit to appeal the Social Security Administration's denial of your applications for benefits. ECF No. 1. You have filed briefs explaining why you believe the Administrative Law Judge (ALJ) was incorrect. ECF No. 15, 16.

---

[1] Pursuant to D.C.COLO.L.APR 5.2(b), Plaintiff is identified by her initials only.

1

In your briefs, you explain that you believe that the ALJ did not correctly consider the evidence from you and your care providers about the limiting effects of your impairments, particularly MCAS. The Court agrees. Consistent with your testimony, your medical records show that the effects of your impairments vary significantly over time. The ALJ's decision does not account for this and, instead, discounts your testimony because you are generically physically fit and fails to account for the opinions of your medical providers regarding your symptoms. Because the Court agrees with you, it reverses the ALJ's denial of benefits and remands the case back to the ALJ for further proceedings.

You also filed a letter requesting accommodations for a trial and to present expert testimony. ECF No. 16, 20. However, the Court's review of Social Security decisions is very limited, and the Court can only consider documents filed during the proceedings before the Administration. For this reason, the Court has denied your request to add expert testimony, and there is no need for a trial. ECF No. 22.

The Court's decision does not discuss some issues that you raised, such as the consideration that the ALJ gave to your mother's testimony or those of your other providers. As part of the Court's limited review, after deciding the issues necessary to determine that a case needs to be returned to the agency for a new decision, the Court will not address additional issues.

## II. BACKGROUND

M.C.W. was 27 years old at the alleged onset date of disability, which was August 30, 2010. Administrative Record (A.R.) at 12, 25. M.C.W. lives with several serious

impairments including mast cell activation syndrome (MCAS), postural orthostatic tachycardia syndrome (POTS), major depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder (PTSD). *See, e.g.*, A.R. at 571. M.C.W.'s medical history is discussed in more detail below.

On January 19, 2018, M.C.W. applied for DIB and SSI. *See* A.R. at 568. M.C.W. was initially denied benefits on July 13, 2018. A.R. at 12. M.C.W. then requested a hearing; however, at the time of the hearing, she was seeking urgent medical care. A.R. at 26, 27, 30, 76. Her provider sent a notice that she was being treated at that time. A.R. at 30, 76. Nonetheless, ALJ Cecilia LaCara dismissed her applications for failure to appear. A.R. at 23, 27. M.C.W. appealed that decision to this Court. A.R. at 695. The Commissioner requested voluntary remand, which was granted on February 8, 2021, by United States District Judge Robert E. Blackburn. *Id.*; No. 20-cv-02367-REB, ECF No. 16 (D. Colo. Feb. 8, 2021).

On remand, her applications were reassigned to ALJ Kurt D. Schulman, hereafter referred to as "the ALJ." A.R. at 581. The ALJ held two telephonic hearings, on October 5, 2021, and on May 2, 2022. A.R. at 568. On May 17, 2022, the ALJ issued a written decision denying M.C.W.'s applications. A.R. at 581. At each step of the required five-step analysis, the ALJ found that:

> 1. At all relevant times, M.C.W. had not engaged in any substantial gainful activity. A.R. at 570.
>
> 2. M.C.W. suffered from the medically determinable, severe impairments of MCAS, POTS, major depressive disorder, generalized anxiety disorder, and PTSD. A.R. at 571.

3. M.C.W. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 ("the Listings").

4. Given her impairments, M.C.W. had the residual functional capacity to perform a range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant must never be required to climb ladders, ropes, or scaffolds. She is able to occasionally climb ramps and stairs. She is able to frequently balance, crouch, kneel, and crawl, and is able to occasionally stoop. She is able to frequently handle and finger with her right upper extremity. The claimant is able to occasionally use moving and/or dangerous machinery, and is able to tolerate occasional exposure to unprotected heights. The claimant is further limited to work that consists of no more than simple, routine, repetitive tasks. She is able to maintain sufficient attention and concentration for extended periods of 2-hour segments during a normal workday with normal breaks, but only in work that consists of no more than simple, routine, repetitive tasks. She is further limited to work that requires no more than frequent interaction with the public, coworkers, and supervisors, and to work that requires no more than occasional supervision, which is defined as requiring a supervisor's critical checking of her work. A.R. at 573. M.C.W. could not perform her past relevant work. A.R. at 579.

5. Nonetheless, there are jobs that exist in significant numbers in the national economy that M.C.W. could perform. A.R. at 580.

M.C.W. filed exceptions to the ALJ's decision, but the Social Security Appeals Council did not assume jurisdiction, making the ALJ's decision final. A.R. at 553. 20 C.F.R. § 404.984. M.C.W. then timely sought review in this Court. *See* ECF No. 1.

### III. LEGAL STANDARD AND STANDARD OF REVIEW

A claimant is disabled for purposes of the Social Security Act if her physical and/or mental impairments are so severe as to preclude her from performing both her previous work and any other "substantial gainful work which exists in the national economy." *See* 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the

4

impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987); *see* 42 U.S.C. § 423(d)(2)(C). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. Rather, to be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); *see also* 20 C.F.R. § 416.905(a).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

(1) The ALJ must first ascertain whether the claimant is engaged in "substantial gainful activity." A claimant who is working is not disabled regardless of any medical findings.

(2) The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

(3) The ALJ must then determine if the impairment meets or equals in severity certain impairments described in the Listings.

(4) If the claimant's impairment does not meet or equal a Listing, the ALJ must determine whether the claimant can perform his past work despite any limitations.

(5) If the claimant does not have the "residual functional capacity" to perform his past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the national economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See Moore v. Astrue*, No. 11-cv-03318-REB, 2013 WL 1222094, at *2 (D. Colo. Mar. 25, 2013) (citing 20 C.F.R. § 404.1520(b)–(f)); *accord Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Moore*, 2013 WL 1222094, at *2. The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. *Id.*

A district court's review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *See, e.g.*, *Pisciotta v. Astrue*, 500 F.3d 1074, 1075 (10th Cir. 2007). "Substantial evidence" is evidence that a reasonable mind would accept as adequate to support a conclusion, requiring more than a scintilla but less than a preponderance of the evidence. *Moore*, 2013 WL 1222094, at *2 (citations omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Id.* (quoting *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992)). In determining whether substantial evidence supports the disability decision, a district court will "meticulously examine the record as a whole," but it will "not reweigh the evidence or retry the case," nor will it substitute its discretion for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Separately, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## IV. ANALYSIS

M.C.W. is proceeding pro se in her appeal with the assistance of her mother. ECF No. 15 at 1. In her Opening Brief, M.C.W. indicates that she "will continue to argue the points made to the Appeals Council" and includes as part of her brief a copy of her arguments during the administrative proceeding *Id*. Additionally, M.C.W. appends an argument challenging the consideration of the opinions of her treating physician, Jill Schofield, MD, and the ALJ's treatment of witness testimony *Id*. at 11–12. The Court agrees that the ALJ erred in his consideration of the medical and opinion evidence from Dr. Schofield as well as M.C.W.'s testimony.

### A. Mast Cell Activations Syndrome ("MCAS")

M.C.W.'s medical history includes an array of physical and mental complaints. The acute problems that she has dealt with have varied over time, but there have been some consistent issues, including allergic reactions, lethargy, brain fog, and mental health challenges. Characteristic of M.C.W.'s medical history is her response to the prompt "When was the last time you felt well?" on an intake form: "never." A.R. at 1715.

After she had applied for disability benefits, M.C.W. was diagnosed with MCAS. This diagnosis has become central to her disability claim and arguments on appeal. Dr. Schofield treats M.C.W. for MCAS. MCAS is described in there record as:

> **MCAS is a newly-described complex multisystem disorder** (2007 first case reports; 2010 and 2011 first proposals for diagnostic criteria) in which mast cells are activated non-specifically, i.e. without IgE allergic triggering. **Since mast cells are present in every organ of the body and they release over 200 different chemical mediators, activated mast cells can produce a large number of signs and symptoms that may be variable and occur in a fluctuating pattern, often creating a complex clinical picture.** We are learning that MCAS is often comorbid

>  in patients with dysautonomia and EDS/HSD and the mechanisms for this are not yet fully understood. **The severity ranges from very mild to severely disabling. It may manifest in myriad different ways and most often causes a lifetime of multisystem unwellness with an inflammatory and/or allergic and/or theme. It often waxes and wanes over the years but it may step-up to a new baseline level of severity in response to major stressors.** In retrospect, the onset is often in the childhood or teenage years, but the diagnosis is often delayed by decades. Many patients experience mast cell "flares" but more severely affected patients also have chronic symptoms. **Patients with MCAS often initially enjoy symptom-free intervals interspersed amongst symptomatic periods. Over time, symptom-free intervals shorten, and finally symptoms become chronic with intensity that fluctuates, but with an overall trend toward steadily increasing severity.**
>
>  **Symptoms of MCAS may be acute and chronic.** Skin flushing and itching are very common as are any type of rash (which seem to come and go randomly), **hives**, abdominal pain, diarrhea, lightheadedness, fainting, labile heart rate and/or blood pressure, unexplained weight loss or gain, **anxiety**, **brain fog**, **lethargy**, **fatigue** and headache. **Patients with MCAS often have triggers that are not classic for allergy patients and include positive or negative emotional stress, extremes of temperature or temperature/barometric change, environmental chemicals (e.g. detergents), alcohol, foods, smells, physical exertion, physical stimuli (e.g. pressure from a tourniquet), medications and the non-drug ingredients in medications (excipients), including dye and fillers.** Drugs that may be a trigger of MCAS in some patients include: morphine, codeine and other opiates, NSAIDS, aspirin, scopolamine, some anesthetic agents, beta blockers, alpha blockers, local anesthetics, thiamine and radiographic dyes. Foods that may be a trigger of MCAS in some patients include: lobster, crawfish, spicy foods, strawberries, pineapple, kiwi, tomatoes, cheese, hot beverages, and alcohol. Food additives may also serve as MCAS triggers.

A.R. at 1553 (emphasis added). In short, MCAS is an autoimmune disorder that causes patients to suffer from myriad symptoms that fluctuate over time and generally get worse with age. *Id*. In M.C.W.'s case, it may account for her past symptoms. *Id*. MCAS is

8

diagnosed by ruling out other potential causes of the symptoms and testing patients to see if they respond to medications that inhibit mast cell activation. *Id*.

### B. Medical Records and Opinions of Dr. Schofield

Dr. Schofield works at the Center for Multisystem Disease. She provided medical records, beginning in 2019, related to her treatment of M.C.W.'s MCAS. A.R. at 1547–88. These records contain separately labeled "Subjective," "Objective," "Assessment" and "Care Plan" sections. *Id*. Included in the assessment section is a subsection labeled "Medical disability" where Dr. Schofield indicates in each record that she considers M.C.W. to be medically disabled. One such statement reads, in part:

> I consider Morgan to currently be medically disabled due to severe MCAS and POTS. [sic] which are both recognized to be severely disabling in a subset of patients. She may be able to improve to where she can tolerate at least part time work with ongoing treatment trials, but not at this time. Currently she has disabling symptoms at baseline but she also develops very severe and prolonged flares unpredictably.

A.R. at 1562. The assessment and care plan sections additionally contain listings of clinical manifestations related to MCAS, lab results, and treatment regimens, such as efforts related to a "current prolonged flare" in September of 2021. A.R. at 1562.

In the decision, the ALJ noted that "Dr. Jill Schofield, M.D., opined that the claimant was 'medically disabled' due to her MCAS and POTS." A.R. at 578. The ALJ found that "statements on issues reserved to the Commissioner are inherently neither valuable nor persuasive" and stated that, "[i]n accordance with 20 CFR 404.1520b(c) and 416.920b(c), no articulation has been provided about evidence of this nature." A.R. at 579. The ALJ did not otherwise discuss Dr. Schofield's reports or opinions in formulating the RFC.

9

M.C.W. argues that it was improper for the ALJ to reject Dr. Schofield's entire report on the basis that it included an opinion on the ultimate question of disability. She acknowledges that "20 CFR 404.1527(d) does state that certain opinions are an issue reserved to the Commissioner," but asserts that this provision "cannot be applied carte blanche to any medical opinion in the file simply because the medical opinion contains the statement that the patient is unable to work full-time." ECF No. 15 at 6. M.C.W. insists that "Dr. Schofield's entire report at 29F needs to be carefully reviewed, as it is very consistent with the overall record of evidence," including Dr. Schofield's statements on the issue of disability. *Id*.

The Commissioner responds directly regarding Dr. Schofield's statements that M.C.W. is "medically disabled," arguing that such statements were properly ignored under 20 C.F.R. § 404.1520b(c)(3). ECF No. 17 at 15. On this point the Court agrees. The regulations indicate that statements that a claimant is or is not disabled address an issue reserved for the Commissioner, and state that ALJs "will not provide any analysis about how we considered such evidence in our determination or decision." 20 C.F.R. § 404.1520b(c).

With regard to the other statements in Dr. Schofield's reports, the Commissioner argues that "Plaintiff fails to point to any specific statements from Dr. Schofield that could arguably meet the definition of a medical opinion," and concludes that the argument that other portions of the report should be addressed as medical opinions is underdeveloped and "should be deemed waived." ECF No. 17 at 15 n.11 (citing 20 C.F.R. § 404.1513(a)(2)

10

and *Bronson v. Swensen*, 500 F.3d 1099, 1105 (10th Cir. 2007)). The Cout respectfully disagrees.

M.C.W. appropriately challenges the ALJ's wholesale rejection of not only any statements that could be considered medical opinions but also Dr. Schofield's explanations of M.C.W.'s related symptoms and their impacts. The provision cited by the Commissioner, 20 C.F.R. § 404.1513(a), establishes that, in addition to medical opinions, medical source "judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis" are evidence that will be evaluated in relation with a decision. § 404.1513(a)(3). The ALJ erred by ignoring all other aspects of Dr. Schofield's reports based on their inclusion of a statement that M.C.W. was disabled. *Id*. Dr. Schofield's reports contain numerous other opinions and judgments concerning M.C.W.'s impairments that are the proper subject of consideration. For example, beyond the statement that M.C.W. is disabled, the medical disability section states that M.C.W. "develops very severe and prolonged flares unpredictably," A.R. at 1562, which is Dr. Schofield's "judgment[] about the nature and severity of [M.C.W.'s] impairments." 20 C.F.R. § 404.1513(a)(3). Dr. Schofield's reports also indicate that numerous substances trigger M.C.W.'s autoimmune symptoms to flare, A.R. at 1550, which are relevant to M.C.W.'s "ability to adapt to environmental conditions, such as temperature extremes or fumes." § 404.1513(a)(2)(iv). The ALJ's failure to consider the aspects of Dr. Schofield's report beyond her opinion on the ultimate issue of disability was error.

### C. Plaintiff's Testimony

At her hearings, M.C.W. testified that "she could not work because of her fatigue and weakness," noting that her "stomach burns and aches" and her "thoughts are foggy and scattered." A.R. at 574. "Any stressors increase the severity of her symptoms" and "her health waxed and waned." *Id*. "The claimant testified that the biggest reason she could not work a full-time job is the overwhelming fatigue." *Id*. "Her anxiety, depression, brain fog, and lack of focus also prevents her from working." *Id*.

The ALJ found that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" and that the "medical record is not entirely consistent with the degree of limitation alleged by the claimant. A.R. at 575. The ALJ reasoned that:

> [T]he claimant's grossly normal physical exams are inconsistent with the degree of limitation alleged by the claimant (see, e.g., 1F/4; 5F/14, 35; 15F/4; 17F/5; 19F/4; 21F/4; 24F/4; 25F/10-11; 26F/79; 32F/8; 38F/14; 45F). For example, the claimant ambulated normally and had a normal station (5F/14; 26F/5). She could heel, toe, and tandem walk (38F/57). The claimant's Romberg exam was negative (38F/57). She had normal tone and motor strength in her bilateral upper and lower extremities (5F/15). Her muscle strength was five-out-of-five bilaterally (38F/57). She had normal movement throughout (5F/15; 24F/4). The claimant's sensation and cranial nerves were intact (5F/15). Her cardiovascular exams were normal, and her respiration was without wheezes, rales, or rhonchi (5F/14). She was able to mow her lawn (43F/15).

*Id*.

The ALJ's reasoning does not bear a rational relationship to M.C.W.'s testimony or rely on substantial evidence for rejecting such testimony. *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (requiring "such relevant evidence as a reasonable mind might accept as

12

adequate to support a conclusion" (internal quotation marks omitted)). Essentially, M.C.W. testified that, due primarily to MCAS, she is tired all the time, has trouble thinking, and her symptoms periodically flare up. *Id*. The ALJ found this testimony inconsistent with the wholly unrelated facts that plaintiff can assert normal muscle strength in single-action tests,[2] can walk and stand normally, and breathed normally in one test.[3] *Id*. The ALJ's statement that M.C.W. "was able to mow her lawn" is troubling when the underlying medical record is considered. The corresponding counseling notes relate that:

> She was outside mowing her lawn and had a sudden onset of severe depression which she describes as "depressive episode x10" and this led to suicidal ideations because she just wanted to stop that depressive feeling. She went to the ED and after awhile [sic] the episode went away and she returned home. This occurred again and when she spoke to her psychologist, she was able to get her admitted. While in the hospital . . .

A.R. at 1949. Perhaps it goes without saying that someone who, while mowing the lawn, was overcome with suicidal thoughts that lead to her being admitted to the hospital was not, in fact, able to mow her lawn. The ALJ's basis for rejecting M.C.W.'s testimony was error.

### D. Harmless Error Analysis

Having found that the ALJ erred in his decision, the Court is required to determine whether these errors were harmless. *See Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (quoting 28 U.S.C. § 2111). The Court finds that the errors were not harmless. The ALJ's

---

[2] The medical records and M.C.W.'s testimony discuss "weakness" in relation to fatigue, not physical strength. A.R. at 289, 1137. For example, the following exchange occurred at the first hearing: "Q Okay. So -- all right. So the weakness or the symptoms that you're talking about they don't interfere with taking a shower or putting on clothes? A It does. Like yesterday I didn't take a shower, I went right to bed, but usually I can summon the energy to get a shower." A.R. at 619.

[3] The medical record reflects that M.C.W. was diagnosed with asthma and suffered from related breathing problems. *E.g.*, A.R. at 1555. The ALJ acknowledged that this as a non-severe impairment. A.R. at 571.

13

errors substantially affected the formulation of Plaintiff's RFC by, for example, failing to account for the variability over time in M.C.W.'s symptoms and abilities as well as the various circumstances that trigger her symptoms. *See* A.R. at 573. The RFC formulated in the decision does not appear to, for example, consider M.C.W.'s ability to sustain full-time work on a regular basis considering her fatigue and periodic flares in symptoms, which Dr. Schofield determined were "very severe." A.R. at 1562. These potentially dispositive issues should be considered on remand.

Having found that remand is warranted, the Court declines to consider the other issues raised because they may be addressed differently on remand. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## IV. CONCLUSION

Based on the foregoing analysis, the Court ORDERS as follows:

The conclusion of the Commissioner (through the ALJ) that M.C.W. was not disabled is REVERSED and REMANDED for further proceedings.

DATED this 20th day of August 2024.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge